STATE OF FLORIDA *ex rel.* RIVERS H. BUFORD, ATTORNEY GENERAL, *Relator,* v. BEN SHEPARD, *Respondent.*

Opinion filed August 14, 1922.

Petition for rehearing denied August 26, 1922.

Petition to reopen the cause denied February 6, 1923.

1.  In providing that "the legislature shall not pass special or local laws" in any of the "enumerated cases" among which "cases" is "regulating the fees of officers of the State and county," and that in all such cases all laws "shall be general and of uniform operation throughout the State" the constitution distinguishes between "special or local laws," and laws that "shall be general and of uniform operation throughout the State" without defining either class of laws; but generality and uniformity of operation do not forbid reasonable classifications, and the legality of a legislative classification depends upon its reasonableness with reference to the nature of the subject upon which the law is to operate.

2.  A classification may be reasonable and practicable as applied to one subject, and yet be arbitrary, unjust and impractical as applied to another subject of legislation. Likewise one classification of a subject may be arbitrary while another classification may be reasonable, practical and properly predicated on the subject.

3.  If a classification is arbitrary and without a fair basis in the subject and object of the legislation, it is not permitted as a classification to affect the organic rule requiring generality and uniformity of operation throughout the State.

4.  In prescribing compensation for county officers from fees collected by them, classifications may be based on the total receipts having reference to the amount of business done in a county, the fees collected being uniform. Such classification is manifestly just, reasonable and practical in view of the

subject. The fees to be collected are uniform throughout the State wherever such classification exists.

5. One cannot contest the validity of a legislative classification to which he does not belong unless it invalidates the classification he is in.

6. If the provisos in Section 1 of Chapter 8479 are invalid because based on an arbitrary and unreasonable classification, the other portions of the act are valid and may be enforced.

A case of original jurisdiction.

Peremptory writ awarded.

*Rivers Buford,* Attorney General, for Relator;

*Bart A. Riley, James F. Glen* and *Atkinson, Evans & Mershon,* for Respondent.

WHITFIELD, J.—The following alternative writ of mandamus was issued by this court:

"In the name of the State of Florida: To Ben Shepard, as Clerk of the Circuit Court of Dade County, Florida.

"Whereas, it appears from the petition of Rivers H. Buford, as Attorney General of the State of Florida, filed in this court, as follows:

"That Ben Shepard on the first day of January, 1922, was and at all times since has been and now is Clerk of the Circuit Court of Dade County, Florida.

"That the net income of the said Ben Shepard as Clerk of the Circuit Court of Dade County, Florida, during the quarterly period between January 1st, 1922, and March 31st, 1922, exceeded the sum of $5,000.00 and the said Ben

Shepard as such Clerk of the Circuit Court of Dade County, Florida, will have a further net income during each quarterly period of the year 1922, and on the 31st day of March, 1922, it appeared and now appears that the net income of the said Ben Shepard as Clerk of the Circuit Court of Dade County, Florida, will exceed the sum of $5,000 for the said year 1922.

"That the said Ben Shepard as Clerk of the Circuit Court of Dade County, Florida, did not render to the Board of County Commissioners of Dade County, Florida, at the expiration of the quarterly period ending March 31st, 1922, a sworn statement, or any statement, showing in detail the expenses of his office, the fees and commissions collected, and the gross and net income thereof, and has not filed such statement with the said Board of County Commissioners of Dade County, Florida, as provided by Chapter 8497, Acts of 1921, and the said Ben Shepard as Clerk of the Circuit Court of Dade County, Florida, has declined and refused to render or file such statement, or any statement, with the said Board of County Commissioners of Dade County, Florida, claiming that the said Chapter 8497, Acts of 1921, is unconstitutional, null and void, and that he is under no duty by virtue of the said Act of the Legislature to render or file such statement.

Now, Therefore, we, willing that full and speedy justice be done in the premises, do hereby command you, Ben Shepard, and Clerk of the Circuit Court of Dade County, Florida, that you do forthwith render to the Board of County Commissioners of Dade County, Florida, sworn statement showing in detail the expenses of your office, the fees and commissions collected, and the gross and net income thereof for the quarterly period between January 1st, 1922, and March 31st, 1922, or show cause before this

Honorable Court why you do not do so on the 24th day of June, 1922, at 10 o'clock A. M., on the said day.

Witness the Honorable Jefferson B. Browne, Chief Justice of the Supreme Court of Florida, at Tallahassee, and the seal of the said Court, on this the 12th day of June, 1922.

G. T. WHITFIELD,

Clerk of the Supreme Court of Florida.''

The return to the alternative writ is as follows:

''Now comes the respondent, Ben Shepard, Clerk of the Circuit Court of Dade County, Florida, and for a return to the alternative writ of mandamus issued and served upon him in the above styled cause, says:

''First—This respondent admits that on January 1, 1922, he was, and at all times since has been and now is Clerk of the Circuit Court of Dade County, Florida, and that his net income as such clerk during the quarterly period between January 1, 1922, and March 31, 1922, exceeded the sum of five thousand dollars ($5,000.00), and that he, as such clerk, will have a further net income during each quarterly period of the year 1922, and that on the 31st day of March, 1922, it appears and now appears that his net income as such clerk will exceed five thousand dollars ($5,000.00) for the year 1922.

''Second—This respondent admits that he did not render to the Board of County Commissioners of Dade County, Florida, at the expiration of the quarterly period ending March 31, 1922, a sworn statement or any statement showing in detail the expenses of his office, the fees and commissions collected, and the gross and net income thereof, and that he has not filed such statement with the said Board of County Commissioners of Dade County, Florida,

210     SUPREME COURT OF FLORIDA.

State ex rel. Buford v. Shepard—Opinion of Court.

as provided by Chapter 8497, Acts of 1921, and that he has declined and refused to render or file such statement or any statement with the said Board of County Commissioners on the ground that said Chapter 8497, Acts of 1921, is unconstitutional, null and void, and that he is under no duty by virtue of the said Act to render or file such statement.

"Third—This respondent avers that his gross and net income as Clerk of the Circuit Court of Dade County, Florida, for the year 1921 respectively $56,928.36 and $24,887.99; and that the gross and net income respectively of the Clerk of the Circuit Court of Duval County, Florida, which is the only county in the State of Florida having a population in excess of one hundred thousand, for the year 1921, were $36,665.10, and $11,096.97, as shown by the official sworn report made to the Comptroller of the State of Florida for the year 1921, and that the volume of services performed by this respondent during the year 1921, greatly exceeded the volume of service performed by the Clerk of the Circuit Court of Duval County, Florida, for the year 1921, and the volume of service of this respondent for the year 1922 and subsequent years will greatly exceed the volume of service performed by the Clerk of the Circuit Court of Duval County.

"Fourth—And this respondent moves to quash the said alternative writ of mandamus on the following grounds:

"1. On the ground that the said Chapter 8497, Acts of 1921, is unconstitutional, null and void on the ground that the same is in violation of the provisions of Sections 20 and 21 of Article 3 of the Constitution of Florida.

"2. That said Chapter 8497 of Acts of 1921 is in violation of the provisions of Section 27, Article 3 of the Constitution of Florida.

"3. That said Chapter 8497 of Acts of 1921 is in violation of the provisions of Section 6, Article 8 of the Constitution of Florida.

"4. That said Chapter 8497 is unjust, unreasonable, arbitrary and discriminatory, and is otherwise in violation of the Constitution of the State of Florida.

"5. That said Chapter 8497 is in violation of the provisions of Article 2 of the Constitution of the State of Florida, in that it contains an unlawful delegation of power,

"And this respondent prays to be hence discharged with his costs."

The Constitution contains the following provisions:

"The legislature shall not pass special or local laws in any of the following enumerated cases; that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, or for the punishment of crime or misdemeanor; regulating the practice of courts of justice, except municipal courts, providing for changing venue of civil and criminal cases; granting divorces; changing the names of persons; vacating roads; summoning and empaneling grand and petit juries, and providing for their compensation; for assessment and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers, and for designating the places of voting; for the sale of real estate belonging to minors, estates of decedents, and of persons laboring under legal disabilities; regulating the fees of officers of the State and county; giving effect to informal or invalid deeds or wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries." Sec. 20, Art. III.

"In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the legislature may pass special or local laws; Provided, That no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least sixty days prior to the introduction into the legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the legislature before such bill shall be passed." Sec. 21, Art. III.

"The legislature shall provide for the election by the people or appointment by the governor of all state and county officers not otherwise provided for by this constitution, and fix by law their duties and compensation." Sec. 27, Art. III.

"The legislature shall provide for the election by the qualified electors in each county of the following county officers: a Clerk of the Circuit Court, a Sheriff, Constables, a County Assessor of Taxes, a Tax Collector, a Superintendent of Public Instruction and a County Surveyor. The term of office of all county officers mentioned in this Section shall be for four years, except that of County Assessor of Taxes and County Tax Collector, who shall be elected for two years until at the general election to be held in the year A. D. 1916, when and after which they shall be elected for a term of four years. Their powers, duties and compensation shall be prescribed by law. The legislature shall provide by law for the care and custody of all county funds and shall provide for the method of reporting and paying out all such funds.

"Provided, County Treasurers elected in General Election held in 1914 shall hold office for the term elected." Sec. 6, Art. VIII.

Chapter 8497, Acts of 1921, is as follows:

"An Act to Fix and Determine the Compensation and Remuneration of all County Officials in the State of Florida now paid in whole or in part by fees and commissions; To require reports by said officials; To provide for the Duty of the Board of County Commissioners in Reference thereto: To provide for the distribution of Moneys Collected hereunder, and to provide for the auditing of the Accounts of said Offices.

"*Be It Enacted by the Legislature of the State of Florida:*

"Section 1. Each county official whose compensation for his official duties is paid wholly or partly by fees or commission or by both by fees and commissions shall receive as his yearly compensation for his official services, from the whole or a part of the fees and commissions so collected, the following sum only:   All the net income from such office not to exceed Five thousand ($5,000.00) Dollars; sixty (60%) per cent. of the next One Thousand ($1,000.00) Dollars, or any fraction thereof; forty (40%) per cent. of the next Two Thousand ($2,000.00) Dollars, or any fraction thereof; twenty (20%) per cent. of the next Two Thousand ($2,000.00) dollars, or any fraction thereof, and ten (10%) per cent. of the rest and residue thereof; Provided, however, that should said method of computation yield a net income of more than Six Thousand ($6,000.00) Dollars per year, the excess over and above Six Thousand ($6,000.00) Dollars net per year shall be paid over as herein provided and no such officer shall under the foregoing computation of remuneration receive as his net

income from the moneys so collected by him more than Six Thousand ($6,000.00) Dollars per year. Provided, that in counties of One Hundred Thousand (100,000) population or over said officers shall receive from the net income the first Five Thousand ($5,000.00) Dollars; ninety (90%) per cent. of the next One Thousand ($1,000.00) Dollars; fifty (50%) per cent. of the next Two Thousand ($2,000.-00) Dollars; thirty (30%) per cent. of the next Two Thousand ($2,000.00) Dollars, and ten (10%) per cent. of the rest and residue thereof; Provided, further, that in no event shall such officers be entitled to more than Seven Thousand Five Hundred ($7,500.00) Dollars per annum.

"Sec. 2. The term "net income" as provided by this law shall mean the residue of the income from such office after deducting all reasonable expenditure for the salaries of clerks and assistants and necessary expenditures for the proper operation of said office.

Sec. 3. Each of said officials shall render to the Board of County Commissioners at the expiration of each quaterly period after the operation of this Act, a sworn statement showing in detail the expenses of such office, the fees and commissions collected, and the gross and net income thereof, which said reports shall be filed in the minutes of the meeting of said Board, and be at all times a record for public examination. And should said Board, upon examination thereof, be satisfied that any such official does not, in the conduct of his said office comply with the purposes and intent of this Act, it shall be the duty of said Board of County Commissioners to send a copy of said report to the Governor of this State, together with its objections thereto. Provided, further, that nothing herein contained shall relieve any such official from making reports to the State Comptroller as now or may hereafter be required by law.

VOL. 84, JUNE TERM, 1922.    215

State ex rel. Buford v. Shepard—Opinion of Court.

And, provided, further, that the Governor of this State may at any and all times have full right and power to cause an audit of the acts, doings and reports of each of said officials.    And, provided further, that until the net income of any officer shall exceed Five Thousand ($5,000.-00) Dollars per annum, no report hereunder shall be required.

"Sec. 4.    It shall be the duty of each and every such officer, to pay on or before the first of each month of January hereafter, into the General Revenue Fund of their respective counties, all moneys in excess of the sums to which they are under the provisions of this Act entitled.

"Sec. 5.    Should any section of this Act be held inoperative or void, or should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance thereof.

"Sec. 6.    All laws and parts of laws in conflict herewith are hereby repealed.

"Sec 7.    This Act shall take effect January 1st, 1922.

"Approved June 14, 1921."

The fees *that may be collected* for services rendered by the Clerks of the Circuit Court and other county officers are prescribed by statutes that are general and of uniform operation in every county of the State.    See Sections 3084, 774, 775, 2891, 803, 3347, 5973, 797, 801, 3384, 2899, Rev. Gen. Stats. 1920.

The provisions of Section 2 of Chapter 8497 do not in effect authorize the officer to fix his own compensation, by permitting him to control the amounts paid by him "for the salaries of clerks and assistants and necessary expenditures for the proper operation of" his office.    The officers

have heretofore had the right to fix the number of and the amounts paid to their clerks and assistants and the amounts paid for other office expenses, and this has been paid from the fees fixed by law, leaving the residue as the "net income" of the official. Section 3 affords a check to prevent abuses in official conduct and does not in effect authorize the Governor to fix the compensation of county officers. This Act is essentially different from Board of Com'rs of Hillsborough County v. Savage, 63 Fla. 337, 58 South. Rep. 835, and State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634.

The statutes "regulating the *fees*" that may be collected by county officers are general and of uniform operation throughout the State. Sec. 3884, etc. above cited. The effect of Chapter 8497 is not to change the uniform fees that may be collected under the law, but to prescribe and fix the compensation of county officers under Section 6, Article VIII, and Section 27 of Article III of the Constitution.

In providing that "the legislature shall not pass special or local laws" in any of the "enumerated cases" among which "cases" is "regulating the fees of officers of the State and county," and that in all such cases all laws "shall be general and of uniform operation throughout the State," the constitution distinguishes between "special or local laws," and laws that "shall be general and of uniform operation throughout the State" without defining either class of laws; but generality and uniformity of operation do not forbid reasonable classifications, and the legality of a legislative classification depends upon its reasonableness with reference to the nature of the subject upon which the law is to operate. A classification may be reasonable and practicable as applied to one subject, and

yet be arbitrary, unjust and impractical as applied to another subject of legislation. Likewise, one classification of a subject may be arbitrary while another classification may be reasonable, practical and properly predicated on the subject.

The legislature does not create, but designates and classifices, subjects of legislation. It enacts provisions that operate upon designated and classified subjects. Provisions of a law may be general and of uniform operation throughout the State, if they operate upon a designated subject or upon a classification wherever it shall exist or may appear in the State. A law may be general and of uniform operation throughout the State, even though the conditions of the subject upon which it operates do not exist in all parts of the State; if it operates uniformly upon the specified subject and conditions wherever they exist in the State, the law may be general and not special or local.

The manifest intent of the organic provisions contained in Sections 20 and 21, Art. III, is that laws enacted in the "cases" mentioned shall not be "special or local," that is, in their operation shall not be made potentially or specifically applicable to special cases or to only a portion or to some portions of the State when they can be made general to operate throughout the State. If by its terms or necessary effect and intent, a law regulating the fees of State and County officers, can operate only in certain portions of the State though the conditions are similar throughout the State, or the law cannot at any time apply to the same subject matter under similar conditions that do exist or that may hereafter exist in the other portions of the State, the law may be regarded as special or local. But if the law is fairly capable of general and uniform operation and is potentially applicable throughout the State whenever the

circumstances and conditions, as stated in the legislative enactment, that are reasonably and properly classified and provided for, may come into existence, the law may be regarded as being general and of uniform operation throughout the State, within the intent of the constitution, even though when enacted all or some of the provisions of the law could not operate in all the counties of the State, because similar subjects do not exist or the classified conditions had not then arisen in some counties.    See Ex Parte Wells, 21 Fla. 280; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Collier v. Cassady, 63 Fla. 390, 57 South Rep. 617; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; 94 U. S. 155.

Chapter 8497 operates uniformly throughout the State upon all similar conditions as classified in the Act, and all of its provisions will be applicable to every county of the State as the conditions therein developed as contemplated by the law.    The law is "general and of uniform operation throughout the State," since the conditions on which the law operates may develop in all the counties.

As similar conditions are developed in all the counties of the State, the law will uniformly operate in each and all of them.    The law is of uniform operation throughout the State upon the conditions and classifications enacted. But if a classification is arbitrary and without a fair basis in the subject and object of the legislation, it is not permitted as a classification to affect the organic rule requiring generality and uniformity of operation throughout the State.

In prescribing compensation for county officers from fees collected by them, classifications may be based on the total receipts having reference to the amount of business

done in a county, the fees collected being uniform. Such a classification is manifestly just, reasonable and practical in view of the subject. The fees to be collected are uniform in every county of the State; the amounts allowed by the statute to be retained by the officers are general as to an appropriate classification when predicated upon the volume of collections made, and are uniform throughout the State wherever such classification exists. The classification contained in the two provisos in Section 1, Chapter 8497, is based upon population and, on the showing made, it may not have a reasonable relation to the business done or to the volume of fees collected, which indicate that the classification may be arbitrary, since it has no relation to the amount and responsibility of services for which the compensations is intended to be prescribed and fixed.

It appears that the gross and net amount of fees collected in 1921 by the Clerk of the Circuit Court in one county of the State is largely in excess to those collected in the only county of the State having 100,000 or more population. This at least tends to show the unjust and arbitrary nature of the classification that is based *on population*. But the respondent is not within the classification based on population since he is an officer in a county of less than 100,000 population, and he cannot contest the validity of that classification when it does not invalidate the classification he is in. Mutual Film Corp. of Missouri v. Governor of State of Kansas, 236 U. S. 248, 35 Sup. Ct. Rep. 393; Stinson v. State, 63 Fla. 42, 58 South. Rep. 722.

If the proviso to Section 1 is based on an arbitrary and unreasonable classification it does not, in view of Section 5 of the Act, render invalid the other portions of the Act which do apply to the respondent. State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70. South. Rep. 367.

The provisions of the Act that affect the respondent, including those fixing the maximum compensation and providing for making the Act effective, are reasonable, complete and appropriate regulations prescribing and fixing the compensation of county officers, a subject within the lawmaking power, not shown to be violative of organic law.

A peremptory writ will be awarded,

TAYLOR, C. J., AND WEST, J. J., concur.

BROWNE, C. J. specially concurring in conclusion.

BROWNE, C. J., Concurring.—I concur in the conclusion reached in this case, that Chap. 8497, Acts of 1921, is constitutional and valid, but only if the proviso in relation to counties having 100,000 population or more, is eliminated.

I regard that proviso as unconstitutional and invalid. All of the "enumerated cases" in Sec. 20, Art. III of the Constitution, whereby the legislature is prohibited from passing special or local laws, are of equal dignity.

The legislature cannot enact a valid law providing that "the punishment for the crime of larceny shall be imprisonment not exceeding two years, or by fine not exceeding $1,000.00 or by both fine and imprisonment in all counties in the State; provided, that 'in Counties having 100,000 population or more,' the punishment shall be by imprisonment not exceeding five years, or by a fine not exceeding $5,000.00, or by both fine and imprisonment."

Neither could the legislature make a rule for "changing venue of civil and criminal cases" for part of the State, and a different rule "in counties of 100,000 population or over."

State ex rel. Buford v. Shepard—Concurring Opinion.

The same is true with regard to "summoning and empaneling grand and petit juries" where expediency and convenience might suggest a different rule for sparsely settled counties than in. those more thickly populated.

If a classification based upon population may be constitutionally applied in the matter of "regulating the. fees of officers of the State and county," a similar classification would have to be sustained in an Act making the punishment of crime vary according to population, in the several counties of the State, and likewise with regard to all the "enumerated cases" in Sec. 20 of Art. III of the Constitution. It follows that so much of Sec. 1 of Chap. 8497 as provides "that in counties of One Hundred Thousand (100,000) population or over said officers shall receive from the net income the first Five Thousand ($5,000.00) Dollars; ninety (90%) per cent. of the next Two Thousand ($2,000.00) Dollars; thirty (30%) per cent. of the next Two Thousand Dollars; and then ten (10%) per cent. of the rest and residue thereof; Provided, further that in no event shall such officers be entitled to more than Seven Thousand Five Hundred ($7,500.00) Dollars per annum," is unconstitutional and void.

As this may be eliminated without destroying the purpose of the Act, and as we cannot say that the legislature would not have passed it without this proviso, the rest of the Act is not affected, and remains valid and enforcable.