606 So.2d 645 (1992)
Betty S. HOLZENDORF, Appellant/Cross Appellee,
v.
Tommie R. BELL, et al., Appellee/Cross Appellant.
CITIZENS PETITION AGAINST THE GARBAGE FEE, et al., Appellants/Cross Appellees,
v.
CITY OF JACKSONVILLE, Appellee/Cross Appellant.
Nos. 90-3579, 90-3582.
District Court of Appeal of Florida, First District.
September 11, 1992.
*646 Mark H. Mahon, Jacksonville, for appellants, cross appellees.
James L. Harrison, General Counsel, Steven E. Rohan, Deputy General Counsel; Neill W. McArthur, Jr., Asst. Counsel, Jacksonville, for appellee, cross appellant.
SMITH, Judge.
Before us is an appeal and a cross-appeal of a final judgment entered in a declaratory judgment action in which the trial court held that a proposed amendment to the charter of the City of Jacksonville could not be adopted by public referendum. We affirm as to the appeal, and reverse as to the cross-appeal.
In 1990 the Jacksonville City Council enacted an ordinance assessing a non ad valorem tax to be levied annually against each residential unit within the city for services by the city in the collection, disposal and recycling of solid waste. A citizens' petition drive was commenced which proposed an amendment to the city charter prohibiting the imposition of the tax without public approval by referendum. Petitions were circulated and submitted to the Jacksonville Supervisor of Elections, as required by the city charter, to examine the petitions and to ascertain whether the petitions were signed by the required number of persons, and whether such persons were qualified voters. The Supervisor of Elections found that the petitions contained the necessary signatures, but upon advice of the general counsel for the City of Jacksonville, who informed the Supervisor that the proposed amendment to the city charter was "constitutionally invalid on its face," the proposal was not placed on the ballot.
In view of the controversy concerning the proposed amendment, the City of Jacksonville filed suit for declaratory judgment seeking a determination as to validity of the proposed amendment, naming as defendants "Citizens Petition Against the Garbage Fee," and certain individual citizens associated with the petition. On the same day, appellant Holzendorf, a Duval County resident and member of the state legislature, *647 filed a petition for writ of mandamus seeking to compel the Supervisor of Elections to place the referendum question on the ballot for the upcoming general election. Because the suit for declaratory judgment and the petition for writ of mandamus involved the same issues, the cases were consolidated for trial.
After receiving oral and written argument, the circuit court rendered a final order and judgment declaring the petition for charter amendment constitutionally invalid and procedurally defective, and ordered that the question not be placed on the ballot for vote. In the same order, appellant Holzendorf's petition for writ of mandamus was denied. On rehearing, the trial court receded from its ruling on procedural defectiveness of the petition, and that ruling is the subject of the City's cross appeal.
The proposed amendment sought to amend the charter of the city in pertinent part, as follows:
Article 26, Section 26.3 of the Charter of the City of Jacksonville, a new section is added to read no non ad valorem tax assessed for a garbage fee ... shall be imposed upon the people of Jacksonville, Florida, County of Duval, without a referendum vote of the people. This section shall become effective January 1, 1990.
In the final order, the trial court gave several reasons why the proposed amendment should not be placed on the ballot: (1) the proposed amendment attempts to amend the charter by granting the right of referendum, which power can be granted only by the Legislature; (2) the amendment would interfere with the council's right to amend the charter without referendum; (3) if passed, the amendment would have the effect of repealing a validly passed ordinance by referendum, and that right is not reserved in the Jacksonville city charter; (4) the amendment would disrupt the budgetary process of the city; and (5) there are procedural defects in the petition which render it invalid.
In 1967, pursuant to Chapter 67-1320, Laws of Florida (1967), the voters of Duval County adopted a charter creating a single consolidated government in Duval County for the City of Jacksonville and other municipalities within the county. Section 23.05 of that charter provided for amendment to the charter by ordinance proposed by the city council, or by petition signed by at least five percent of the qualified voters of the county, thereafter to be submitted to the voters at a public referendum for approval or disapproval of the proposed amendment. The method of amendment was changed in 1978 when the legislature enacted Chapter 78-536, Laws of Florida (1978). Section 3.01(e) of the 1978 amendment provided in part that the consolidated government had the power to "repeal or amend any provision of this charter, and adopt other provisions of this charter, by ordinance, to the same extent as could be done by the legislature of the state of Florida... ." The act excepted from the power of the council to change the charter by ordinance any change which affected the creation or existence of the municipality, the terms of elected officers and the manner of their election, the distribution of powers among elected officers, matters prescribed by the charter relating to appointed boards, the form of government, or any rights of municipal employees. The act provided that amendments as to such matters could not become effective without approval by referendum of the electors as provided in section 166.031, Florida Statutes.
Appellants argue that although the trial court recognized the right of the people to speak in a referendum as a fundamental and essential right, even noting the holding in Florida Land Co. v. City of Winter Springs, 427 So.2d 170 (Fla. 1983), that the referendum is the "essence of a reserved power," the trial court nevertheless erred in finding that the referendum was not the appropriate vehicle by which to enact the proposed amendment. Appellants urge that the trial court erred in relying upon the 1978 amendment as implicitly prohibiting the right of the citizens to amend the charter as attempted, contending that the trial court's ruling "flies in the face" of section 166.031, Florida Statutes. According to appellants, the effect of the trial *648 court's ruling grants all power to the city council of the City of Jacksonville, and none to the voters of Jacksonville; and that it makes the right to amend the charter by referendum in Jacksonville a "complete and utter farce." As for the city's contention that should the voters be allowed to amend their charter by a referendum as attempted, the city council would then be deprived of the right to amend the charter by ordinance without the necessity of a public referendum, despite the enactment of the legislature granting such right, appellants respond that the city's position "emasculates the stated intent of the Florida Constitution that all political power is inherent in the people."
Appellants candidly acknowledge, however, that there is an apparent conflict between the powers granted to the governing body of the City of Jacksonville to amend its charter, and the general laws recognizing the right of the people to a referendum to amend their charter. Appellants also concede that there is no case law exactly on point with regard to this issue, inasmuch as every charter which has been involved in litigation is different from the one at issue here.
Appellants also urge that the trial court's ruling that the amendment to the charter would be disruptive to the operation of the city government is without foundation. Finally, appellants simply note that the argument rests upon "two competing interests," the city relying upon its reading of the 1978 legislative enactment, and the citizens relying upon their referendum powers as spelled out in Chapter 166, Florida Statutes. Significantly, the validity and effect of the 1978 enactment is not challenged by appellants; nor do appellants demonstrate in what manner any referendum powers granted under Chapter 166 would alter the ruling of the trial court below.
Other than reference to two court decisions mentioned in the trial court's order, appellants' brief contains no citation of case law or other authorities. We begin our review, therefore, with one of the established legal principles referred to by the trial judge in his order below; that is, that the referendum power "can be exercised whenever the people through their legislative bodies decide that it should be used." Florida Land Co. v. City of Winter Springs, 427 So.2d 170, 173 (Fla. 1983). In Florida Land, the court held that the referendum process was properly used to approve or disapprove a proposed zoning ordinance, because the city's charter specifically provided for direct citizen control over ordinances. As will be seen in the discussion that follows, it is the absence of a provision for "direct citizen control over ordinances," in the charter of the City of Jacksonville that holds the key to the decision in this case.
We agree with the trial court's ruling that the amendment as proposed is constitutionally infirm. As noted, the amendment would prohibit the assessment of a garbage fee "without a referendum vote of the people." As acknowledged in appellants' brief, Article 6, section 5, Florida Constitution, controls the manner in which the power of referendum may be granted. That section provides in part: "Special elections and referenda shall be held as provided by law." Under the Constitution, the phrase "as provided by law" means as passed "by an act of the legislature." Broward County v. Plantation Imports, Inc., 419 So.2d 1145, 1148 (Fla. 4th DCA 1982). Since the constitution expressly provides that the power of referendum can be granted only by the legislature, it is beyond the power of the electorate to say what shall or shall not be done by referendum. As appellee points out, the electorate has no power, by initiative and referendum, to enact a charter amendment conferring upon itself the power to restrict action by the city council by making the council's action subject to referendum. This is so simply because no such authority has been granted by the legislature. The city council has the authority under the provisions of the charter to enact ordinances, or to amend the charter, without a referendum. Unless some provision of the charter grants to the electorate the right of referendum as to the authorized acts of the council undertaken by the council without *649 necessity of a referendum, the electorate has no authority to reimpose a referendum requirement on the council's authority to amend the charter or to do any other act within the council's authority.
Accordingly, the specific authority granted to the council by the legislative act of 1978 to amend the charter without a referendum must be construed as a limitation upon the general grant of referendum authority to the citizens to amend the charter. As noted above, appellants' brief candidly admits that there may be an amendment of the charter by referendum, but at the same time there may be a repeal or amendment of such amendment by action of the city council, without a referendum. Appellants offer no solution to this impasse, except to urge that this court should find that action taken in the exercise of the referendum power is paramount to action taken by the council. There is nothing in the charter that would support this result, and appellants cite no authority compelling such a ruling by the court.[1]
We conclude, that because the proposed amendment sought to usurp the legislature's authority to grant the right of referendum, the amendment was properly found defective by the trial court, and properly ordered not eligible for placement on the ballot for a referendum vote.
A second reason given by the trial judge for his ruling also has merit. The trial court viewed the proposed amendment as having the effect of repealing the existing ordinance imposing a garbage tax. The court found that the right to repeal ordinances by referendum is not conferred by the city charter. Section 4.02, "allocation of certain powers and duties" provides in part:
All powers and duties of the consolidated government which are legislative in nature shall be exercised by the council.
Again, in section 5.06, "powers," the charter states:
All legislative powers of the consolidated government... are vested in the council, and the council shall have the right to legislate with respect to any and all matters which are within the powers of the consolidated government.
A provision for referendum elections is found in section 23.05, "Method of Amendment of Charter," which provides that "[a]n amendment to this charter" may be proposed by ordinance or by a petition of the qualified voters, and thereafter be submitted for approval or disapproval by public referendum. Unlike the charters dealt with in Florida case law extending the right of referendum to adoption or repeal of ordinances, there is no referendum authority in the charter of the City of Jacksonville with respect to ordinances. Florida Land Company v. City of Winter Springs, supra (the referendum power can be exercised whenever the people through their legislative bodies decide that it should be used; the Winter Springs charter provides for the direct control over ordinances); Barnes v. City of Miami, 47 So.2d 3 (Fla. 1950) (charter specifically granted power by initiative and referendum to propose and adopt ordinances); cf., State ex rel. Keefe v. City of St. Petersburg, 106 Fla. 742, 145 So. 175 (1933) (initiative and referendum provisions of charter held not to apply to appropriations ordinances); Merrill v. Dade County, 272 So.2d 187 (Fla. 3d DCA 1973) (charter provided for enactment or repeal of ordinance by initiative and referendum); City of Coral Gables v. Carmichael, 256 So.2d 404 (Fla. 3d DCA), cert. dismissed, 268 So.2d 1 (Fla. 1972) (charter gave referendum power to approve or reject ordinance passed by City Commission except appropriation or annual tax levy ordinances); Scott v. City of Orlando, 173 So.2d 501 (Fla. 2d DCA 1965) (charter provided referendum control over ordinances). It is clear from a reading of the case law and authoritative treatises that under various statutory and charter provisions, the referendum power sometimes extends to ordinances, and sometimes *650 does not. Likewise, municipal governing bodies are sometimes given the authority to repeal or amend ordinances initiated by the voters, and sometimes are not.[2]
We are of the view, therefore, that the specific vesting of legislative authority in the council, coupled with the absence from the charter of any language remotely suggesting the extension of the petition and referendum power to include ordinances, considered in the further light of the legislature's expansion of the council's authority to amend the charter without referendum (1978 enactment), discloses a legislative intention to exclude the right to adopt or repeal ordinances by referendum.
Appellant makes no argument that the language of section 23.05 permitting "amendment to this charter" by referendum, is so expansive in itself as to contemplate the repeal by referendum of police power regulations dealing with the collection, disposal and payment for garbage services furnished by the city. And while it is clear that the referendum power shall be liberally construed, Barnes v. City of Miami, supra, it is nevertheless our judgment that matters of this kind are generally dealt with by way of ordinance or resolution, rather than being made a part of the organic document establishing a city's government.[3]
Our conclusion that the limited grant of referendum authority in the Jacksonville charter does not include power over ordinances of the kind under consideration is strengthened by considerations similar to those noted by the court in State ex rel Keefe v. City of St. Petersburg, supra. There, the court in construing the city's charter provision authorizing "Direct Legislation by the People" said:
The reference to `legislation' as used in this section of the statute, when considered in connection with the general plan of governmental operation being set up, could not have been intended to embrace those matters of financial management, which, while legislative in their character, are such as are impliedly, if not expressly, required by the charter to be dealt with by the city's responsible officers on the basis of peculiar and special knowledge possessed by them concerning the possible resources of the city, and the necessities required to be met through the exercise of the delegated power of taxation (citations omitted).
145 So. at 176. We caution, however, that since we do not have before us a case in which the power to adopt or repeal ordinances by referendum is granted, we are not called upon to determine the limits of such power, and therefore express no opinion as to the extent of such power where it is authorized by the charter.
We note the statement of intent contained in section 23.07 of the Jacksonville charter. There it is stated that the consolidated government is formed "in the interest of modern, efficient and economical government." Whether or not it is entirely logical or consistent with this expressed intent to extend the referendum power to actions of the city council such as the one under consideration is a matter we believe to rest within the discretion of the legislature, rather than a court.
As for the cross-appeal, we are of the view that the city's position is correct, and that the petition as submitted was not properly signed as required under section 17.08 of the charter. Although this issue may be moot, we address it briefly for the benefit of the parties in later proceedings. Section 23.05 of the charter provides that petitions to amend the charter are required to be executed in the same manner as provided in section 17.08 for petitions for recall. Section 17.08 provides that copies *651 of a petition may be used, but in such a case, "one of the signers of each copy shall affirm under oath before an officer competent to administer oaths that he believes that each signature to the copy is the genuine signature of the person it purports to be." There were numerous copies of the petition, but there was only one affirmation of the signatures: a single affidavit by one of the individual appellants, which was submitted some thirteen days after the copies of the petitions had been delivered to the Supervisor of Elections. In the affidavit, the affiant stated that she believed each signature to be genuine.[4] In testimony before the court, she stated that she knew most but did not know all of the persons collecting signatures on the petitions, and did not personally supervise the collecting of petitions, since they were circulated from several sources.
We are of the view that the trial judge was correct in his initial ruling, changed on rehearing, that the procedure for execution of the petitions was not substantially complied with. The charter, section 17.08, clearly calls for affirmation under oath of each petition by "one of the signers of each copy." This was not done. We are of the further view that no waiver of this provision occurred, as appellants contend, because the Supervisor of Elections failed to give timely notice of the deficiency. To the contrary, we find no duty on the part of the Supervisor under the charter to rule on the validity of the procedures used in executing the petitions. The duty of the Supervisor, under section 17.08, is confined to the ascertainment of "whether the petition is signed by the required number of persons and whether such persons are qualified voters as shown by the registration books." The Supervisor's examination does not contemplate a verification of the genuineness of signatures, but only requires a determination of the number of signers and verification that the names are those of qualified voters. Here, the petition process was halted by action of the City Attorney in his capacity as legal advisor under the provision of the charter, Chapter 85-435, Laws of Florida, because of invalidity of the proposed amendment, for reasons unrelated to the manner of execution of the petition. We find no basis for a waiver of the technical requirements of execution of the petition by any action or inaction on the part of the Supervisor.
The final judgment on appeal is affirmed, except as to matters raised on the cross-appeal, as to which we reverse.
JOANOS, C.J., and BARFIELD, J., concur.
NOTES
[1] As a practical matter, however, it would appear to us that through the exercise of the authority found in section 17.08 of the charter, "Recall by Voters," the citizens of Jacksonville do indeed hold the ultimate political power.
[2] See, for example, Scott v. City of Orlando, supra, and authorities quoted; and see, Merrill v. Dade County, 272 So.2d at 190, footnote 3, quoting a provision of the Dade County Charter prohibiting amendment or repeal by the Board of an ordinance adopted through initiative proceedings for a period of one year after the referendum election.
[3] Albeit under dissimilar facts, in State v. City of St. Petersburg, 61 So.2d 416 (Fla. 1952), the court held that an ordinance simply regulating charges for sewage disposal is an exercise of the executive or administrative function which is not subject to a referendum election.
[4] One of the signatures was that of "President George Bush, 1600 Pennsylvania Avenue, Washington, D.C."